UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| JAMES CASSIDY,<br><br>      Plaintiff,<br><br>v.<br><br>TOWNSHIP OF SCOTCH PLAINS, SCOTCH PLAINS POLICE DEPARTMENT, THOMAS ATKINS REGINA SCARINCI, , DOUGLAS HANSEN, ET AL.<br><br>      Defendants | Civ. Action No. 04-2255 (KSH)<br><br><u>OPINION</u> |

**KATHARINE S. HAYDEN, U.S.D.J.**

### I.  INTRODUCTION

James Cassidy ("Cassidy") filed a 16-count complaint in state court, which the defendants timely removed to this Court on the basis of federal question jurisdiction. Before the Court are three motions for summary judgment, one brought jointly by the Township of Scotch Plains (the Township") and the Scotch Plains Police Department (the "Police Department"), one brought by Regina Scarinci ("Scarinci"), and one brought by Thomas Atkins ("Atkins"). Because the defendants raise similar arguments, the Court will analyze their motions collectively.

### II. BACKGROUND

This case arises out of the termination of Cassidy's employment as a police officer for the Township. He was sworn in as a Patrol Officer for the Police Department in 1990, and was

promoted to the rank of Sergeant in 1995. (Cassidy Dep. 45, 53.)[1]

In 1999, Scarinci was sworn in as a Patrol Officer. (Cassidy Dep. 74.) Between June and December of 2000, Cassidy served as her supervisor when their shifts overlapped. (Cassidy Dep. 86-87.) In late June or early July of 2000 they began a sexual relationship that continued until November or December of that year. (Cassidy Dep. 174, 177-78.)

About one year after their sexual relationship ended, Cassidy drove to Scarinci's home and discovered her lying unconscious in her car. (Cassidy Dep. 286.) He took her to a nearby hospital, and she was released next day. (Id.) This incident called into question her ability to continue to serve as a police officer. (Gramigna Report 4-5.)[2] The Chief of Police, Thomas O'Brien ("O'Brien"), informed her that she would have to undergo a psychological evaluation before returning to duty. (Gramigna Report 5.) Scarinci completed the evaluation and the examining psychologist[3] concluded that she was unfit. (Id.) The psychologist's report also noted that Scarinci made statements about sexual harassment in the Police Department. (Gramigna Report 6.) O'Brien asked Scarinci about this, but she denied having problems with other officers. (Id.) O'Brien discussed the psychologist's report with the Township Manager, Thomas Atkins ("Atkins") and they concluded that Scarinci could not return to work, and placed her on sick leave. (Atkins Dep. 61, 79.)[4]

In January of 2002, Scarinci called the president of her local Policemen's Benevolent Association, Brian Cheney, and reported that she had been subjected to sexual harassment by her co-workers. (Cassidy Dep. 305.) Cheney relayed this complaint to O'Brien who in turn informed Atkins, who told the Township Attorney, Douglas Hansen, Esq. (Atkins Dep. 82.)

---

[1] The transcript of James Cassidy's deposition is Exhibit A to the Mariani Certification.
[2] Elizabeth Gramigna's confidential report to the Township of Scotch Plains is Exhibit B to the Mariani Certification.
3The name of the examining psychologist does not appear in the record.
[4] The transcript of Thomas Atkins's deposition is Exhibit D to the Mariani Certification.

O'Brien, Atkins and Hansen, with the Township Council's approval, hired an attorney, Elizabeth Gramigna ("Gramigna"), to investigate and report back to them. (Atkins Dep. 83, 95.)

Gramigna interviewed several members of the Police Department, including Scarinci and Cassidy; then she issued her report, which detailed several incidents involving Cassidy. Scarinci told Gramigna that she had engaged in a consensual sexual relationship with Cassidy. (Gramigna Report 9.) Scarinci also said that once the relationship started, Cassidy "soon began to expect sex on the job and off the job." (Id.)

Atkins directed the Chief of Police, Marshall V. Nelson Jr. ("Nelson")[5], to retain special counsel to conduct an internal investigation. The Town Council chose Thomas Savage, Esq. ("Savage"), who ultimately advised Atkins to bring disciplinary charges against several officers, including Cassidy. (Atkins Dep. 146-147, 151.)

On April 16, 2002, Savage served Cassidy with a Preliminary Notice of Disciplinary Action[6] ("Preliminary Notice"), that set forth five charges: (1) misconduct (N.J.S.A. 40A:14-147[7]); (2) conduct unbecoming a police officer (N.J.A.C. 4A:2-2.3(6))[8]; (3) discriminatory conduct consisting of sexual harassment (N.J.A.C. 4A:2-2.3(9)); (4) other sufficient cause (N.J.A.C. 4A:2-2.3(11)); and (5) disobedience of departmental rules and regulations. (Preliminary Notice 1.) The "specifications" supporting the charge stated:

> You engaged in sexual activity with a subordinate officer. You engaged in improper conduct while on duty consisting [ ] sexual harassment and the creation of a hostile work environment. You misused your supervisory position and abused your trust as a police officer.

(Preliminary Notice 1.)

---

[5] O'Brien retired on March 1, 2002 and he was succeeded by Marshall V. Nelson Jr. (Nelson Dep. 29.) The transcript of Nelson's deposition is Exhibit E to the Mariani Certification.
[6] The Preliminary Notice of Disciplinary Action is Exhibit G to the Mariani Certification.
[7] N.J.S.A. 40A:14-147 describes the procedure that must be followed to suspend or remove a police officer.
[8] N.J.A.C. 4A:2-2.3 lists eleven general causes that can subject a state employee to major discipline.

3

Cassidy hired an attorney who negotiated a settlement with the Township whereby Cassidy would be granted a leave of absence, during which he would seek other employment; he would also be allowed to voluntarily resign from the police force in good standing. (Id.) But while he was on leave, Cassidy changed his mind and notified the Township that he intended to return to the Police Department and defend himself against the disciplinary charges. (Cassidy Dep. 357.) On July 3, 2002, the Township served Cassidy with an Amended Preliminary Notice of Disciplinary Action[9] ("Amended Notice"), containing the same charges and adding eight factual specifications supporting them.

A disciplinary hearing was held over the course of eight days, and 27 witnesses testified, including Cassidy and Scarinci. (Cassidy Dep. 418.) The designated hearing officer was Robert Czech, Esq., who found that the Township had sustained its burden of proof as to six of the eight specifications in the Amended Notice. (Hearing Officer's Determination 14.)[10] He also found that Cassidy's conduct was such that the elements of all of the charges against him were met. Czech recommended that Cassidy be removed from his position as a police officer. (Hearing Officer's Determination 15.)

Atkins, who as Township Manager was responsible for disciplinary matters involving Township employees, terminated Cassidy based upon the outcome of the disciplinary hearing. (Atkins Dep. 137-138.) On March 27, 2003 a Final Notice of Disciplinary Action[11] ("Final Notice") was issued to Cassidy that terminated him effective March 28, 2003. (Cassidy Dep. 432.)

Cassidy timely requested a hearing before the New Jersey Department of Personnel. The case was transferred to the Office of Administrative Law ("OAL"), where it was heard by

---

[9] The Amended Preliminary Notice of Disciplinary Action is Exhibit H to the Mariani Certification.
[10] The determination of the hearing officer is Exhibit I to the Mariani Certification
[11] The Final Notice of Disciplinary Action is Exhibit K to the Mariani Certification.

4

Administrative Law Judge Jesse H. Strauss. (Id.) Cassidy, Scarinci, Atkins and others testified. Judge Strauss concluded that Cassidy had engaged in conduct unbecoming a public employee and had violated Police Department Rules. (Decision of Judge Strauss 27.)[12] But he found that Cassidy's conduct did not constitute sexual harassment because his relationship with Scarinci was consensual. (Decision of Judge Strauss 26.) As a result, Judge Strauss recommended that the Township impose a six-month suspension and demote Cassidy to a lower rank. (Decision of Judge Strauss 33.)

Cassidy and the Township both filed exceptions with the Department of Personnel Merit System Board ("the Merit Board"), which agreed with Judge Strauss's determination as to the charges against Cassidy. (Final Action of the Merit Board 7.)[13] However, the Merit Board concluded that Cassidy's conduct warranted removal and reinstated his termination. (Id.) Cassidy filed a motion for reconsideration, which the Merit Board denied. He then filed a notice of appeal with the Appellate Division of the Superior Court of New Jersey, which he withdrew on July 21, 2006.

### III. STANDARD

Summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502

---

[12] Judge Strauss's Decision is Exhibit L to the Mariani Certification.
[13] The Final Administrative Action of the Merit System Board is Ex. N to the Mariani Certification.

(3d Cir. 2004).  In addition, the Court may not weigh the evidence or make credibility determinations on a motion for summary judgment.  <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998).

### IV.  DISCUSSION

The complaint contains 16 counts, six of which contain federal claims.

**A.  Section 1983**

Cassidy asserts two claims under 42 U.S.C. § 1983.  Count Thirteen alleges that the Township, the Police Department and Hansen "abused their office and used their positions as public employees to deprive the plaintiff of his civil rights" in violation of federal law (Compl. ¶ 116.)  Count Fifteen alleges that the Township, the Police Department, Hansen and Gramigna "violated the plaintiff's civil rights in order to terminate" him in violation of 42 U.S.C. § 1983.  Cassidy explained in his deposition that his 1983 claims are based on a denial of his due process rights.  (Cassidy Dep. 693-701.)  He stated in his deposition that his due process rights were violated when the defendants withheld evidence during the administrative process that could have cleared him of the charges.  (Cassidy Dep. 693-9.)  Specifically, he asserts that the defendants refused to produce  an unredacted copy of Gramigna's report, Gramigna's notes, and "the names of other officers against whom defendant Scarinci had made allegations."  (Cassidy's Brief in Opposition to Motion for Summary Judgment 6.)  In addition, he argues in his brief that he "was not allowed to present evidence regarding defendant Scarinci's medical and psychological issues resulting from her abuse of alcohol, drugs and admitted sex addiction." (Id.)

Section 1983 requires that the plaintiff allege: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived plaintiff

of his rights, privileges or immunities secured by the U.S. Constitution or the laws of the United States." D'Aurizio v. Palisades Park, 963 F.Supp. 378, 383 (D.N.J. 1997)(citing West v. Atkins, 487 U.S. 42, 48-49 (1988).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976)(citation omitted).  There are two steps to proving a procedural due process violation: the plaintiff must prove interference with a protected property interest, Larsen v. Senate of Commonwealth of Pennsylvania, 154 F.3d 82, 92-93 (3d Cir. 1998), *and* he must show the procedures employed by the state to protect that property interest were constitutionally inadequate. Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).  The defendants argue that Cassidy will not be able to prove the latter.  (Atkins's Brief in Support of Motion for Summary Judgment 49.)

"[T]here is no rote formula for sufficient protections under the Due Process Clause. Rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007)(quoting Mathews, 424 U.S. at 334.)  The determination of how intensive the hearing must be "depends on the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide, and (3) the government's interest." Wilson, 475 F.3d at 178 (citing Mathews, 424 U.S. at 334-335).

Although Cassidy had a significant interest in continued employment, the record

7

demonstrates that there was substantial process before he was terminated. He received formal notice of the disciplinary action on two occasions, participated in two separate hearings, and appealed the ALJ's decision to the Merit Board. Cassidy has failed to show how the procedures employed in the administrative process were deficient. Although he argues that he was denied access to exculpatory evidence he admits that his attorney objected to the withholding of evidence at each level of the administrative process and the objections were ruled upon. (Cassidy Dep. 693-699.) He contends that he was not allowed to present certain evidence about Scarinci but he does not demonstrate that he was denied an opportunity to be heard on the issue of whether the evidence was admissible. Cassidy may disagree with the rulings the hearing officers made but there is nothing to indicate that he was not given an "opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333. The Court is satisfied that Cassidy was given sufficient procedural protections under the Due Process Clause. Accordingly his section 1983 claims must fail.

### B. Section 1985

The complaint also contains three counts, brought against the Township, the Police Department, Gramigna, and Hansen, that allege violations of 42 U.S.C. § 1985. Count 11 alleges: "Defendants, . . . have tampered with a witnesses in violation of 42 U.S.C.A. section 1985(2) in order to secure a termination of the plaintiff causing damages." (Compl. 112.) Count 12 alleges: "Defendants . . . have abused their office and unlawfully used their positions as public employees to fabricate disciplinary charges against the plaintiff in order to terminate him causing him damages" in violation of federal law. (Compl. ¶ 114.) Count 14 alleges: "Defendants, . . . in violation of 42 U.S.C.A. Section 1985(2), have created false public records in order to terminate the plaintiff causing him damages. . . ." (Compl. ¶ 119.)

To prove a violation of section 1985 the plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

D'Aurizio v. Palisades Park, 963 F.Supp. 378, 385-386 (D.N.J. 1997). In addition, "[t]he language [of section 1985] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Cassidy has failed to point to any evidence in the record to suggest that any actions taken against him were motivated by racial or class-based discrimination. Accordingly, his claims under section 1985 must be dismissed.

### C. Section 1986

Count Nine alleges a violation of 42 U.S.C. § 1986: "Defendants Township of Scotch Plains, Scotch Plains Police Department, and Hansen conspired with each other and others, in violation of 42 U.S.C.A. Section 1986, to fabricate charges against the plaintiff to use him as a scapegoat and terminate the plaintiff causing him damages." (Compl. ¶ 108.) Section 1986 states in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act . . .

42 U.S.C. § 1986

To state a claim under section 1986 the plaintiff must show that he or she has a valid claim under section 1985. D'Aurizio v. Palisades Park, 963 F.Supp. 378, 386 (D.N.J., 1997); see also

9

Bowman v. Bank of Delaware, 666 F.Supp. 63, 64 (D. Del.1987) (stating "[i]f the complaint does not state a § 1985(3) cause of action, then any § 1986 claim must fail as well.")  In this case Cassidy failed to point to any evidence in the record that there was a violation of section 1985, therefore he does not have a valid claim under section 1986.

### D. Pendent Jurisdiction

To exercise pendent jurisdiction over the balance of the causes of action raised in the complaint, which arise under state law, there must be a federal claim of sufficient substance to confer subject matter jurisdiction on the court.  City of Pittsburgh Com'n. on Human Relations v. Key Bank USA, 163 Fed. Appx. 163, 166 (3d Cir. 2006)(citing Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976).  If it appears that the federal claim or claims could be disposed of on a motion for summary judgment under Fed. R. Civ. P. 56, then "the court should ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." Tully, 540 F.2d at 196.  The Court does not discern that such extraordinary circumstances exist here, and will not address Cassidy's state claims.

### V. CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions for summary judgment as to the federal claims, and declines to exercise jurisdiction over the state law claims. The complaint is dismissed.  An appropriate order will be entered.

Dated:  8/29/07                                                                                       /s/Katharine S. Hayden
                                                                                                                  KATHARINE S. HAYDEN
                                                                                                                  United States District Judge